UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GPM SOUTHEAST, LLC,

        *Plaintiff*,

    v.

RIISER FUELS, LLC, DONALD R. DRAUGHON, JR. and JEFFREY D. "J.D." DYKSTRA,

        *Defendants*.

Case No.:

## COMPLAINT

Plaintiff, GPM Southeast, LLC ("GPM Southeast"), by its attorneys, Duane Morris LLP, for its Complaint against Defendants Riiser Fuels, LLC ("Riiser Fuels"), Donald R. Draughon, Jr. ("Draughon") and Jeffrey D. "J.D." Dykstra ("Dykstra") (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1. Riiser Fuels, Draughon, and Dykstra, along with the other members of Riiser Fuels, diverted and wrongfully transferred at least $3,375,000 in funds that Riiser Fuels received in exchange for gas stations located in the State of Wisconsin.

2. GPM Southeast has been damaged in an amount not less than $3,375,000.00, an amount which is contractually owed to GPM Southeast and for which there is no viable defense to have not paid, as a result of the unlawful and wrongful actions alleged herein.

3. This action arises out of (1) Riiser Fuels' breach of the Post-Closing Adjustment provision of the Asset Purchase Agreement by and between GPM Southeast,

LLC as Purchaser, and Riiser Fuels, LLC as Seller dated as of September 27, 2019; as amended by Amendment to Asset Purchase Agreement, dated as of December 3, 2019 (as so amended, the "APA"); and (2) Defendants Draughon and Dykstra's wrongful distribution of the full amount of the Closing Purchase Price,[1] rather than maintain adequate reserves to satisfy Riiser Fuels' express obligations under the Post-Closing Adjustment provision of the APA.

4. The APA involves a transaction between GPM Southeast (as Buyer) from Riiser Fuels (as Seller) for the acquisition of various retail convenience stores, which include the retail sale of motor fuels and car washes, from various locations on Owned Real Properties and Leased Real Properties located in Wisconsin.

5. Under the clear terms of Section 2.3 of the APA, Riiser Fuels agreed to make Post-Closing Adjustments to the Closing Purchase Price, said adjustments to be based on the annual Store-Level EBITDA of the Locations for the full fiscal year following the Closing.

6. Under Section 2.3 of the APA, Riiser Fuels was required to pay to GPM Southeast the amount of $3,375,000.

7. Despite proper notice of its obligations under the Post-Closing Adjustment provision of the APA, Riiser Fuels has refused to meet its obligations thereunder.

---

[1] Capitalized terms not defined in this Complaint have the same meaning as defined in the APA. Said definitions from the APA are incorporated herein by reference.

8. In violation of their obligations under Delaware law governing limited liability companies and Wisconsin law, Riiser Fuels, Draughon, and Dykstra, among other yet unidentified individuals, made distributions of the proceeds of the Closing Purchase Price to Riiser Fuels' members that resulted in Riiser Fuels being unable to comply with its payment obligations to GPM Southeast under the Post-Closing Adjustment provision of the APA.

## THE PARTIES

9. Plaintiff GPM Southeast, the Purchaser under the APA, is a Delaware limited liability company, with its principal place of business located at 8565 Magellan Parkway, Suite 400, Richmond, Virginia 23227.

10. GPM Southeast is a citizen of the State of Israel and State of Delaware because its members are organized and maintain their principal places in either the State of Israel or the State of Delaware.

11. Defendant Riiser Fuels, LLC, the Seller under the APA, is a Delaware limited liability company, with its principal place of business located at c/o Riiser Fuels Holdings, LLC, 3600 N. Duke Street, Durham, North Carolina 27704.

12. Upon information and belief, none of Riiser Fuels' members are citizens of the State of Israel or the State of Delaware.

13. Defendant Draughon is the President of Riiser Fuels.

14. Upon information and belief, Draughon is a citizen of the State of North Carolina.

15. Defendant Dykstra is the Chief Executive Officer of Riiser Fuels.

16. Upon information and belief, Dykstra is a citizen of the State of California or the State of North Carolina.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity between the parties, who are all citizens of different states or foreign states, and the matter in controversy exceeds the value of $75,000, exclusive of costs or interest.

18. This Court has personal jurisdiction over Defendants because of their substantial contacts to Wisconsin as pertains to the APA. Wis. Stat. § 801.05(1)(d). The APA is "deemed to be a contract entered into in the State of Wisconsin, and it and all matters arising out of the transactions contemplated hereby or related thereto shall be governed, construed and interpreted in all respects according to the Laws of the State of Wisconsin, without reference to principles of conflicts of law thereof." (Ex. 1, APA § 14.5.)

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District and also because the APA expressly provides that this Court shall have "exclusive venue for bringing any action that touches upon or concerns this Agreement."

## FACTS

20. On or about September 27, 2019, Plaintiff GPM Southeast and Defendant Riiser Fuels executed the Asset Purchase Agreement by and between GPM Southeast, LLC as Purchaser, and Riiser Fuels, LLC as Seller dated as of September 27, 2019.

4

21. On or about December 3, 2019, Plaintiff GPM Southeast and Defendant Riiser Fuels executed the Amendment to Asset Purchase Agreement, dated as of December 3, 2019.

22. The Closing Purchase Price arrived at between the parties to the APA was based, in part, on the actual and anticipated performance of these assets. Accordingly, for purposes of making any necessary adjustment to the Closing Purchase Price under the APA, GPM Southeast and Riiser Fuels "prepare[d] a schedule in order to assign a portion of the Base Consideration as the value of each of the Locations, which value shall be based on a percentage of such Location's trailing twelve (12) month EBITDA bears to the trailing twelve (12) months total combined EBITDA for all of the Locations."

23. Section 2.3 of the APA, provides in pertinent part as follows under the heading "Post-Closing Adjustment":

> To the extent the actual twelve month Store-Level EBITDA between January 1, 2020 and December 31, 2020 is less than $8.6 million, (i) [GPM Southeast] shall notify [Riiser Fuels] by no later than March 31, 2021 of the exact calculation of such actual trailing twelve months Store-Level EBITDA and shall provide [Riiser Fuels] reasonably acceptable evidence substantiating the same, which shall include, without limitation, profit and loss statements per Location in Excel, and (ii) provided [GPM Southeast] and [Riiser Fuels] are in agreement (or upon them being in deemed agreement as set forth below) with such calculation, Seller shall pay to [GPM Southeast] an amount equal to the lesser of (x) $3,375,000 and (y)(i) the amount such actual December 31, 2020 trailing twelve month Store-Level EBITDA for the Business (inclusive of all Locations other than the New Acquisition Assets) is less than $8.6 million *multiplied* by (ii) 4.5…. In lieu of paying [GPM Southeast] cash in the amount calculated in the prior sentence, [Riiser Fuels] can tender to [GPM Southeast] the number of MLP Units which were received by [Riiser Fuels] as provided in Section 4.3(y) hereof (using the same value ascribed to the MLP Units in Section 4.3(y)) equal in value to the amount calculated in the prior sentence.

5

24. In other words, Section 2.3 of the APA contained a post-closing clawback for a portion of the Closing Purchase Price in an amount not to exceed $3,375,000 in the event the assets failed to perform as anticipated.

25. Prior to the March 31, 2021 notice date in Section 2.3 of the APA, GPM provided Riiser Fuels with data and notice of actual trailing Store-Level EBITDA.

26. In accordance with the terms of the APA, Riiser Fuels received MLP Unit distributions between the Closing and March 31, 2021. (Ex. 1, APA § 4.3(y).)

27. By letter dated March 31, 2021, GPM Southeast provided written notification to Riiser Fuels of the Post-Closing Adjustment payment due to GPM Southeast under Section 2.3 of the APA.

28. In its March 31, 2021 letter, GPM Southeast stated in pertinent part as follows:

> As previously discussed between the Parties and substantiated by Purchaser, and as shown on the attached schedule, the actual twelve-month Store-Level EBITDA for the period between January 1, 2020 and December 31, 2020 is $5,975,000. 4.5 times the difference between $8.6 million and such amount is significantly greater than $3,375,000. Accordingly, the amount owed by Seller to Purchaser in accordance with Section 2.3 of the APA is $3,375,000. In lieu of paying Purchaser cash for the full amount, Seller may elect to tender to Purchaser 69,188.00 Class X Units of the MLP, which has an aggregate value of $3 million (the "Returnable MLP Units"). The remaining $375,000 owed by Seller to Purchaser would then be payable in cash in accordance with wire transfer instructions previously provided by Purchaser to Seller.

29. In its March 31, 2021 letter, GPM Southeast requested that Riiser Fuels advise by April 9, 2021 as to whether Riiser Fuels would pay "the $3,375,000 owed in cash or will agree to tender the Returnable MLP Units to Purchaser and pay the remaining

6

$375,000 owed in accordance with wire transfer instructions previously provided by Purchaser to Seller. Failing a response by Seller within such time frame, Purchaser will assume Seller has elected to tender the Returnable MLP Units and pay the remainder in cash."

30. By letter dated April 5, 2021, Riiser Fuels advised GPM Southeast that it "does not agree to tender $3,375,000 in the form of cash and/or a combination of Class X Units and cash."

31. In its April 5, 2021 letter, Riiser Fuels stated its belief that "[t]he $8.6 million EBITDA target [set forth in APA § 2.3] would have been hit but for the COVID-19 pandemic" and that the "[b]ut for the COVID-19 pandemic, the Riiser stores would have exceeded the EBITDA target stipulated in the APA by $3,325,000."

32. In its April 5, 2021 letter, Riiser Fuels conceded that in fact the "APA does not deal with the pandemic" or contain any other exception to performance for force majeure events.

33. Following the April 5, 2021 letter, Arie Kotler ("Kotler"), the Chief Executive Officer of GPM Southeast, together with Eyal Nuchamovitz ("Nuchamovitz"), the Executive Vice President of GPM Southeast, had a discussion with Draughon concerning the Post-Closing Adjustment owed to GPM Southeast under Section 2.3 of the APA.

34. During their discussion, Draughon told Kotler and Nuchamovitz that Riiser Fuels did not have funds available to satisfy its obligations under the Post-Closing Adjustment provision in Section 2.3 of the APA because he and Dykstra knowingly

7

caused Riiser Fuels to distribute all of the proceeds of the Closing Purchase Price to Riiser Fuels' members without making any reserve for its Post-Closing Adjustment obligations.

35. During their discussion, Draughon asked Kotler and Nuchamovitz to extend Riiser Fuels' time to make the required Post-Closing Adjustment payment under Section 2.3 of the APA by a year.

36. When asked by Kotler whether Riiser Fuels would be able to meet its obligations under Section 2.3 of the APA if given an additional year to do so, Draughon admitted to Kotler and Nuchamovitz that Riiser Fuels would not have the funds within that time period.

37. Draughon then told Kotler and Nuchamovitz that Riiser Fuels did not have an issue with suing GPM Southeast and threatened that it would not be good for a public company (presumably GPM Southeast's ultimate parent, a public company traded on NASDAQ) to be sued by a shareholder.

38. 6 Del. Code § 18-607(a) provides in pertinent part as follows:

> A limited liability company shall not make a distribution to a member to the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability company, exceed the fair value of the assets of the limited liability company, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of that property exceeds that liability.

39. Wisconsin Statutes § 183.0607 provides, in pertinent part as follows:

> A limited liability company *may not* declare or make a distribution to any of its members if, after giving effect to the distribution, ... (a) The limited

8

liability company *would be unable to pay its debts* as they become due in the usual course of business.

40. By letter dated April 21, 2021, Riiser Fuels advised GPM Southeast that Riiser Fuels' board rejected GPM's offer to resolve the parties' dispute under APA § 2.3 by immediate tender of the 69,188.00 Class X Units of the MLP and "an additional $375,000 note to be satisfied in the future."

41. By letter dated April 29, 2021, GPM Southeast noted that Draughon admitted that Riiser Fuels had failed to retain funds to satisfy its obligations under Section 2.3 of the APA and notified Riiser Fuels that, "to the extent [it] receives any funds from any source, whether as an MLP distribution or otherwise, it must preserve those funds and not distribute those funds to the members of [Riiser Fuels] or make any preferential, fraudulent, or other unlawful transfer."

## COUNT I
### Breach of Contract
### (as to Defendant Riiser Fuels)

42. GPM Southeast reasserts the allegations of Paragraphs 1 through 41 as if fully set forth herein.

43. The APA is a valid and enforceable contract.

44. GPM Southeast has performed all of its obligations under the APA.

45. GPM Southeast seasonably provided Riiser Fuels with written notice of its obligation to make payment of the Post-Closing Adjustment to the Closing Purchase Price under the APA, and in fact provided Riiser Fuels with data and notice well in advance of the March 31, 2021 date set forth in Section 2.3 of the APA.

46. Riiser Fuels has refused to make payment of the amount of $3,375,000 owed to GPM Southeast under the Post-Closing Adjustment provision in Section 2.3 of the APA.

47. Riiser Fuels has breached the APA by, among other things, failing to make payment to GPM Southeast under the Post-Closing Adjustment provision Section 2.3 of the APA.

48. GPM Southeast has provided Riiser Fuels with written notice of its breach of the Post-Closing Adjustment provision in Section 2.3 of the APA.

49. Despite being provided written notice of its breach of its obligations under the Post-Closing Adjustment provision in Section 2.3 of the APA, Riiser Fuels continues to refuse to make payment of the amount of $3,375,000 owed to GPM Southeast.

50. As a direct result of Riiser Fuels' continued breach of Section 2.3 of the APA, GPM Southeast has and will continue to suffer damages in an amount not less than $3,375,000, plus reasonable costs and expenses including reasonable attorneys' fees and expenses under Section 14.9 of the APA.

51. Section 14.9 of the APA provides as follows:

<u>Attorneys' Fees</u>. In the event of a judicial or administrative proceeding or action by one Party against the other Party with respect to the interpretation of, enforcement of, or any action under this Agreement, the prevailing Party shall be entitled to recover reasonable costs and expenses including reasonable attorneys' fees and expenses, whether at the investigative, pretrial, trial or appellate level. The prevailing Party shall be determined by the court based upon an assessment of which Party's major arguments or position prevailed.

WHEREFORE, GPM Southeast prays that this Court:

a. Enter judgment on Count I in favor of GPM Southeast and against Riiser Fuels in an amount not less than $3,375,000.00 plus allowable interest;

b. Award GPM Southeast its attorneys' fees and expenses in accordance with Section 14.9 of the APA;

c. Award GPM Southeast its costs of suit; and

d. Grant GPM Southeast such other and further relief as the Court deems just and proper.

## COUNT II
### Fraudulent Transfer Under Wisconsin Statutes § 242.05 *et seq.*
### (As to All Defendants)

52. GPM Southeast reasserts the allegations of Paragraphs 1 through 51 as if fully set forth herein.

53. Wisconsin Statutes § 242.05 provides that:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[or]

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

54. Draughon admitted to GPM Southeast's CEO, Arie Kotler, and to GPM Southeast's EVP, Eyal Nuchamovitz, that he and Dykstra caused Riiser Fuels to distribute all of the proceeds of the Closing Purchase Price under the APA to Riiser Fuels' members without making provision for its Post-Closing Adjustment obligations under the APA.

11

55. Upon information and belief, Draughon and Dykstra caused Riiser Fuels to make distribution to themselves as members of Riiser Fuels.

56. The distributions Draughon and Dykstra caused to be made to Riiser Fuels' members from the proceeds of the Closing Price paid by GPM Southeast under violate terms of the APA and were unlawful.

57. Draughon and Dykstra caused Riiser Fuels to distribute all of the proceeds of the Closing Purchase Price under the APA at a time when they knew of Riiser Fuels' Post-Closing Adjustment obligations under Section 2.3 of the APA.

58. Draughon and Dykstra caused Riiser Fuels to distribute substantially all of Riiser Fuels' liquid assets.

59. The distributions of all of the proceeds of the Closing Purchase Price under the APA to Riiser Fuels' members have hindered, delayed and defrauded GPM Southeast as Riiser Fuels has failed to make the required payment of the Post-Closing Adjustment under Section 2.3 of the APA.

60. The distributions of all of the proceeds of the Closing Purchase Price under the APA to Riiser Fuels' members were fraudulent under Wisconsin Statutes § 242.05(1) and/or (2).

61. Under Wisconsin Statutes § 242.07, GPM Southeast is entitled to all available remedies for Defendants' fraudulent transfer of the proceeds of the Closing Purchase Price necessary to satisfy Riiser Fuels' Post-Closing Adjustment obligations under Section 2.3 of the APA.

WHEREFORE, GPM Southeast prays that this Court:

a. Enter judgment on Count II in favor of GPM Southeast and against Riiser Fuels, Draughon and Dykstra, jointly and severally, in an amount not less than $3,375,000.00 plus allowable interest;

b. Award all available remedies under Wisconsin Statutes § 242.07, including:

  1. Avoidance of the transfers to the extent necessary to satisfy GPM Southeast's claim under the APA;

  2. Attachment of the fraudulently transferred assets in the possession of the members of Riiser Fuels;

  3. An injunction or appointment of a receiver to prevent loss of the fraudulently transferred assets; and/or

  4. levy execution on the **fraudulently transferred** assets or their proceeds in the possession of the members of Riiser Fuels.

c. Award GPM Southeast its attorney's fees and expenses in accordance with Section 14.9 of the APA;

d. Award GPM Southeast its costs of suit; and

e. Grant GPM Southeast such other and further relief as the Court deems just and proper.

## COUNT III
### Civil Theft Under Wisconsin Statutes § 943.20(1)(b)
### (As to Defendants Draughon and Dykstra)

62. GPM Southeast reasserts the allegations of Paragraphs 1 through 61 as if fully set forth herein.

63. As set forth in the APA, it was the intention of GPM Southeast and Riiser Fuels that Riiser Fuels would maintain adequate reserves from the Closing Purchase Price or other funds to fulfill its Post-Closing Adjustment obligations under Section 2.3 of the APA.

64. Despite the parties' intent and the plain language of the APA, however, Defendants Draughon and Dykstra caused Riiser Fuels to distribute all available cash from the Closing Purchase Price to its members without maintaining adequate reserves to satisfy its obligation to GPM Southeast under Section 2.3 of the APA.

65. Despite repeated written requests, Riiser Fuels has refused to satisfy its obligations to pay GPM Southeast under Section 2.3 of the APA.

66. As a direct and proximate result of the civil thefts committed and orchestrated by Draughon and Dykstra, GPM Southeast has incurred damages of at least $3,375,000, which damages are subject to trebling and all costs of investigation and litigation pursuant to Wis. Stat. §§ 895.446(3) and 943.20(1)(b).

WHEREFORE, GPM Southeast prays that this Court:

a. Enter judgment on Count III in favor of GPM Southeast and against Draughon and Dykstra, jointly and severally, in an amount to be proven at trial, said amount to be in excess of $3,375,000.00, which said damages are subject to trebling and all costs of investigation and litigation pursuant to Wis. Stat. §§ 895.446(3) and 943.20(1)(b);

b. Award GPM Southeast its attorney's fees and expenses;

c. Award GPM Southeast its costs of suit; and

d. Grant GPM Southeast such other and further relief as the Court deems just and proper.

## COUNT IV
## Conversion
## (As to Defendants Draughon and Dykstra)

67. GPM Southeast reasserts the allegations of Paragraphs 1 through 66 as if fully set forth herein.

68. As set forth in the APA, it was the intention of GPM Southeast and Riiser Fuels that Riiser Fuels would maintain adequate reserves from the Closing Purchase Price or other funds to fulfill its Post-Closing Adjustment obligations under Section 2.3 of the APA.

69. Despite the parties' intent and the plain language of the APA, however, Defendants Draughon and Dykstra caused Riiser Fuels to distribute all available cash from the Closing Purchase Price to its members without maintaining adequate reserves to satisfy its obligation to GPM Southeast under Section 2.3 of the APA.

70. Despite repeated written requests, Riiser Fuels has refused to satisfy its obligations to pay GPM Southeast under Section 2.3 of the APA.

71. Draughon and Dykstra took intentional control of property and funds which should have been held by Riiser Fuels for the benefit of GPM Southeast.

72. GPM Southeast did not consent to the distributions made to Riiser Fuels' members of the dissipation of assets which should have been held.

73. The wrongful conduct including, but not limited to, the distributions made by Draughon and Dykstra seriously interfered with GPM Southeast's right to the funds which should have been held.

WHEREFORE, GPM Southeast prays that this Court:

a. Enter judgment on Count IV in favor of GPM Southeast and against Draughon and Dykstra, jointly and severally, in an amount not less than $3,375,000.00;

b. Award GPM Southeast its attorney's fees and expenses;

c. Award GPM Southeast its costs of suit; and

d. Grant GPM Southeast such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Mark A. Bradford*
**DUANE MORRIS LLP**
Mark Bradford
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Phone: (312) 499-0175
Email: MABradford@duanemorris.com

*Attorneys for Plaintiff GPM Southeast, LLC*

Dated: April 30, 2021