# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GPM SOUTHEAST LLC,<br><br>Plaintiff,<br><br>v.<br><br>RIISER FUELS LLC, DONALD RAY DRAUGHON, JR., and JEFFREY DEAN DYKSTRA,<br><br>Defendants. | Case No. 21-CV-554-JPS<br><br>**ORDER** |

On April 30, 2021, Plaintiff, GPM Southeast LLC, filed this action pursuant to 28 U.S.C. § 1332, claiming that Defendants Riiser Fuels, LLC ("Riiser"), Donald Ray Draughon, Jr. ("Draughon"), and Jeffrey Dean Dykstra ("Dykstra") (collectively, "Defendants") breached their Asset Purchase Agreement ("APA") when they failed to pay a post-closing adjustment (the "Post-Closing Adjustment") as required under the APA. (Docket #1). On July 6, 2021, Defendants filed a motion to dismiss, (Docket #15), which is now fully briefed. For the reasons explained below, the Court will grant the motion to dismiss. Additionally, Defendants' motion to restrict certain portions of the APA because they tend to divulge confidential business records or information (Docket #16) will be granted.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

### 2.     RELEVANT FACTS

On September 29, 2019, GPM contracted to buy several gas stations and convenience stores (the "assets" or "stores") from Riiser. The parties signed the APA, which detailed the terms of payment. Ultimately, the price of the assets (the "Closing Purchase Price") would be based on how well the gas stations and stores performed in the fiscal year following the deal's close (the "trailing" year) based on the overall earnings before interest, tax, depreciation, and amortization (the "EBITDA"). To this end, the APA contained a provision titled "Post-Closing Adjustment," at Section 2.3, which explained:

> To the extent the actual twelve month Store-Level EBITDA between January 1, 2020 and December 31, 2020 is less than $8.6 million,
>
> (i) [GPM Southeast] shall notify [Riiser Fuels] by no later than March 31, 2021 of the exact calculation of such actual trailing twelve months Store-Level EBITDA and shall provide [Riiser Fuels] reasonably acceptable evidence substantiating the same, which shall include, without limitation, profit and loss statements per Location in Excel, and
>
> (ii) provided [GPM Southeast] and [Riiser Fuels] are in agreement (or upon them being in deemed agreement as set forth below) with such calculation, Seller shall pay to [GPM Southeast] an amount equal to the lesser of
>
>> (x) $3,375,000 and
>>
>> (y)(i) the amount such actual December 31, 2020 trailing twelve month Store Level EBITDA for the Business (inclusive of all Locations other than the New Acquisition Assets) is less than $8.6 million *multiplied* by (ii) 4.5 . . . .
>
> In lieu of paying [GPM Southeast] cash in the amount calculated in the prior sentence, [Riiser Fuels] can tender to [GPM Southeast] the number of MLP Units[1] which were received by [Riiser Fuels] as provided in Section 4.3(y) hereof (using the same value ascribed to the MLP Units in Section 4.3(y)) equal in value to the amount calculated in the prior sentence.

In effect, this provision required Riiser to pay GPM if the convenience stores underperformed. For this provision to go into effect, the stores must earn less than $8.6 million (EBITDA), and Riiser would be liable for no more than $3,375,000. The provision also allows payment in stock—the MLP units—as calculated in Section 4.3(y). That section, in turn, describes a transaction in which Riiser would furnish certain supplier

---

[1] I.e., stock.

agreements in exchange for cash and MLP stock, and further explains how the stock should be issued.

As it happened, the stores underperformed in the trailing year, which included the first year of the COVID-19 pandemic. In total, the stores earned an EBITDA of $5,975,000, which triggered the Post-Closing Adjustment described above. Based on GPM's calculations, Riiser owed $3,375,000 (the maximum for which it could be liable). On March 31, 2021, GPM gave notice to Riiser of the lackluster EBITDA and provided relevant data from January 1, 2020 to December 31, 2020 to substantiate the profits and losses, as required under the APA.

Riiser did not agree with GPM's assessment. As it explained in a letter dated April 5, 2021, Riiser felt that the $8.6 million EBITDA target would have been amply cleared if not for the COVID-19 pandemic. Thus, it refused to pay. GPM alleges, however, that the APA did not contemplate a pandemic, nor did it contain a *force majeure* clause that would excuse Riiser's payment.

Shortly after the April 5, 2021 letter, the heads of GPM met with the heads of Riiser, including Draughon, the president, and Dykstra, the CEO. During this meeting, Draughon told GPM that Riiser had already distributed the sales proceeds to its members. In other words, Riiser lacked the funds needed to satisfy its obligations under the Post-Closing Adjustment. Draughon asked for an extension of time to pay the Post-Closing Adjustment but acknowledged that one year would not be enough time to assemble the funds.

In light of this information, GPM proposed a Post-Closing Adjustment payment consisting of $3,000,000 in MLP Units and a promissory note for the remainder due. On April 21, 2021, Riiser sent a

letter to GPM in which it explained that its board had rejected GPM's proposed payment structure. GPM wrote back to Riiser imploring it to preserve any funds it received in the future. This lawsuit followed.

GPM brings four claims in this action. Count One is a breach of contract claim against Riiser for failure to make the $3,375,000 payment under the Post-Closing Adjustment provision. Count Two is a fraudulent transfer of funds claim against all Defendants in violation of Wisconsin Statutes section 242.05 *et seq.* Count Three is a civil theft claim against Draughon and Dykstra in violation of Wis. Stat. § 934.20(1)(b). Finally, Count Four is an unlawful conversion claim against Draughon and Dykstra. Defendants moved to dismiss the fraud, theft, and conversion claims.

**3.     ANALYSIS**

   **3.1     Fraudulent Transfer**

Wisconsin Statutes section 242.05 contains two provisions which operate to prevent debtors from transferring assets to avoid repaying a debt. GPM has alleged a violation of each subsection. As explained below, GPM has failed to state a claim under each subsection because it has not alleged that Riiser is or was rendered insolvent by the disbursement.

   **3.1.1     Section 242(1)**

To state a claim under § 242(1), a plaintiff-creditor must allege three elements: first, that "his or her claim arose prior to the transfer," second, that "the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer," and third, "the debtor was insolvent or became insolvent as a result of the transfer." *Beck v. BidRX, LLC*, 918 N.W.2d 96, 101 (Wis. Ct. App. 2018) (citing *Badger State Bank v. Taylor*, 688 N.W.2d 439, 442 (Wis. 2004)).

GPM has failed to allege facts satisfying any of these elements. The first and second elements would be the easiest for GPM to correct in an amended complaint if the factual circumstances supported such an amendment. For example, the condition precedent for Riiser's payment obligation—i.e., the underperformance of the stores for the trailing year—did not exist until the trailing year ended, and GPM calculated the EBITDA and made timely demand. The complaint does not say when Riiser's executives disbursed the funds. It is theoretically possible for Riiser's executives to have disbursed the funds *after* the demand was made—i.e., in the brief period of time between March 31, 2021 and April 5, 2021—thereby satisfying the first element. Similarly, it is theoretically possible for GPM to allege that Riiser did not receive any reasonably equivalent value in exchange for the disbursement of funds. *Id.*; *Badger State Bank*, 674 N.W.2d at 443.

The third element, however, is belied by the complaint itself. The complaint fails to allege that the disbursement rendered Riiser insolvent, nor could it: Riiser held three million dollars in stock positions, and based on the deal's structure, continued to receive payments in stock from GPM as part of the sale of the convenience stores. To highlight this solvency, GPM sought substantial payment from Riiser via stock, a request that Riiser rejected. Moreover, the APA states that Riiser has considerable real estate holdings. (*See* Docket #15-4 at 19).[2] Thus, although Riiser's liquid funds may have been wiped out by the disbursement, the facts alleged in the complaint

---

[2] Although the APA is a document outside of the complaint, the Court will refer to it at the motion to dismiss stage because it is central to this breach of contract case, it is referenced extensively throughout the complaint, and neither party disputes its authenticity. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).

demonstrate that Riiser has some ability to pay the Post-Closing Adjustment fee. Thus, this claim will be dismissed with prejudice because the facts in the complaint preclude GPM's ability to allege that Riiser is insolvent.

### 3.1.2 Section 242.05(2)

To state a claim under the second provision, § 242.05(2), a plaintiff must allege that "(1) the creditor's claim arose before the transfer, (2) the transfer was made to an insider for an antecedent debt, (3) the debtor was insolvent when the transfer was made, and (4) the insider-transferee had reasonable cause to believe the debtor was insolvent." *Beck*, 918 N.W.2d at 101 (citations omitted). This subsection "curtails" a debtor's ability to privilege certain creditors over others "if the debtor is insolvent" and the preferred creditor is an insider. *Id.*

Riiser correctly argues that GPM has failed to allege all four elements, "but the failure of any of the four will do." *Id.* The Court declines to give leave to amend because, as discussed in Section 3.1.1 *supra*, the facts alleged in the complaint preclude GPM's ability to allege that Riiser was insolvent when the transfer was made. This claim will be dismissed with prejudice.

### 3.2 Civil Theft

Wisconsin Statutes section 895.446(1) permit the victim of theft to sue the perpetrator for damages. A plaintiff proceeding under this theory of liability must allege each of the elements in the relevant criminal statute, which, in this case, is Wisconsin Statutes section 943.20(1)(b). Under section 943.20(1)(b), a plaintiff must allege that

> [b]y virtue of [the defendant's] office, business or employment, or as trustee or bailee, having possession or

Page 7 of 11
Case 2:21-cv-00554-JPS   Filed 02/11/22   Page 7 of 11   Document 23

> custody of money . . . [the defendant] intentionally uses, transfers, conceals, or retains possession of such money . . . without the [plaintiff]'s consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the [plaintiff].

This is, effectively, a claim for embezzlement—it applies to "those who are entrusted with the property of another and who retain or use that property in a way that does not comport with the owner's wishes." *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 893 (W.D. Wis. 2006). "The subsection does not apply any time money changes hands and someone walks away unsatisfied." *Wis. Masons Health Care Fund v. Sid's Sealants, LLC*, No. 17-CV-28-JDP, 2017 WL 3835343, at *2 (W.D. Wis. Aug. 31, 2017). Indeed, once a buyer has paid for an asset, the money belongs to the seller—not the buyer: "[w]hen one party transfers money to a second party to complete a transaction or purchase, the first party does not 'entrust' its money to the second." *Id.* Rather, "the second party 'obtains ownership' of the money." *Id.* (citing *Aslanukov*, 426 F. Supp. 2d at 893). Additionally, "[t]he fact that the purchase agreement contained a provision allowing plaintiff to obtain a refund does not mean that defendant obtained only possession or custody of plaintiff's money." *Aslanukov*, 426 F. Supp. 2d at 893; *c.f. Milwaukee Center for Independence, Inc. v. Milwaukee Health Care, LLC,* 929 F.3d 489, 495 (7th Cir. 2019) (distinguishing a right to specific money in an account, which give rise to a conversation claim, from a general right to payment, which does not).

Here, the complaint alleges that GPM and Riiser negotiated for the sale of certain stores in exchange for various terms of payment. Thus, GPM obtained ownership over the stores, and Riiser obtained ownership over the payment. *Aslanukov*, 426 F. Supp. 2d at 893. The Post-Closing Adjustment

subsection gave GPM a right to repayment if certain triggering events occurred: *if* the stores underperformed *and* GPM provided proof of profits and loss *and* notified Riiser by certain date, *then* Riiser would be obligated to pay GPM an amount of money not to exceed $3,375,000. But there was no escrow provision requiring Riiser to guard funds for GPM's benefit, nor any specific account to which GPM could lay claim—only an agreement that if the stores underperformed, Riiser would repay GPM a certain amount of money. Indeed, the Post-Closing Adjustment provision contemplates that Riiser could repay GPM in more than one way, including via stock, thereby indicating that this situation deals with a right to repayment, rather than a right to specific funds in an account. *See Milwaukee Health Care*, 929 F.3d at 495.

Once GPM's claim to the Post-Closing Adjustment accrued, Riiser sat in a debtor's position, obliged to repay GPM. This is consistent with how GPM characterizes the parties' relationship in the complaint. (Docket #1 ¶¶ 28, 29, 33, 49). However, it well settled that "liabilities growing out of a debtor-creditor relationship cannot be made the basis of a charge of embezzlement." *Hanser v. State*, 259 N.W. 418, 419 (Wis. 1935). In sum, the parties—a sophisticated buyer-seller pair—simply are not situated in such a way that section 943.20(1)(b) applies to the transaction. This claim, too, must be dismissed with prejudice.

### 3.3 Unlawful Conversion

To state a claim for conversion, GPM must allege that Riiser intentionally controlled or took GPM's property without GPM's consent, and that act "result[ed] in serious interference with the rights of [GPM] to possess the property." *Bruner v. Heritage Cos.* 593 N.W.2d 814, 818 (Wis. Ct. App. 1999). As explained in Section 3.2 *supra*, GPM has not alleged any facts

indicating that it retained ownership over its payment to Riiser—only that it accrued a right to partial repayment once certain conditions occurred. But "[t]he fact that the purchase agreement contained a provision allowing plaintiff to obtain a refund does not mean that defendant obtained only possession or custody of plaintiff's money." *Aslanukov*, 426 F. Supp. 2d at 893. Rather, this is a "simple breach of contract scenario." *Id.* The Court denies leave to amend because doing so would be futile given the facts alleged in the complaint, which make clear that GPM paid Riiser outright for the convenience stores, without requiring Riiser to keep those funds in escrow until the Post-Closing Adjustment window closed. These allegations foreclose any plausible additional allegations that GPM retained ownership of its money, as well as any viable claim for conversion.

4. **CONCLUSION**

It is undisputed that GPM has stated a claim for breach of contract against Riiser. However, the allegations about the parties' relationship, as well as the nature of their agreement, foreclose liability for the more nefarious conduct alleged in Counts Two, Three, and Four of the complaint. Therefore, the motion to dismiss (Docket #15) must be granted. Because no viable claims have been alleged against Draughon and Dykstra, these defendants will be dismissed from this action.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Docket #15) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Counts Two, Three, and Four of Plaintiff's Complaint (Docket #1) be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendants Donald Ray Draughon, Jr. and Jeffrey Dean Dykstra be and the same are hereby **DISMISSED** from this action; and

**IT IS FURTHER ORDERED** that Defendants' motion to restrict document (Docket #16) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge